**Rashmi C. SKADEGAARD, Plaintiff,**

v.

**Thomas D. FARRELL, Philip H. Witt, Howard Silverman and Ira Mintz, Defendants.**

**Civ. A. No. 83–945.**

United States District Court, D. New Jersey.

Jan. 19, 1984.

Neil Mullin, Mullin & Casteleiro, Hoboken, N.J., for plaintiff.

Howard Davis, Sobel & Lyon, East Hanover, N.J., for defendant Witt.

Bruce McMoran, Norris, McLaughlin & Marcus, Somerville, N.J., for defendant Mintz.

Robert B. Reed, Milford, N.J., for defendant Farrell.

Roger Jacobs, Green & Dzwilewski, P.A., East Orange, N.J., for defendant Silverman.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is an action arising out of the alleged sexual harassment of plaintiff, Rashmi Skadegaard, who, after allegedly rebuffing her supervisor's advances, claims she was the subject of a retaliatory conspiracy perpetrated by the defendants to this lawsuit. Plaintiff was, for a period of approximately two years, the first and only female staff Clinical Psychologist to be hired by her employer, the Adult Diagnostic and Treatment Center [ADTC], a diagnostic, treatment and custodial facility operated by the New Jersey Department of Corrections [DOC] for recidivistic sexual offenders. The defendants in the instant action are Thomas Farrell (Assistant Superintendent of the ADTC) plaintiff's immediate supervisor until his dismissal from that position following the incidents recited herein, and his alleged co-conspirators, defendants Ira Mintz (Superintendent of the ADTC), Philip H. Witt (Head of the Depart-

ment of Psychology at the ADTC), and Howard Silverman (Director of Outpatient Services at the ADTC).

Plaintiff claims that her rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as under 42 U.S.C. §§ 1983, 1985(3), and 1986 have been violated by the acts of defendants. Plaintiff also asserts various pendent state law claims including violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* and malicious interference with plaintiff's employment contract. The complaint was filed on March 16, 1983. This case is presently before me on the motions of each of the four defendants to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure as well as on Statute of Limitations and equitable grounds. For the reasons set forth below, I have decided to deny defendants' motions.

The complaint alleges the following facts. Plaintiff was hired in May of 1976. Commencing in the summer of 1977, plaintiff was subjected to repeated "crude sexual advances and suggestive comments" of Assistant Superintendent Farrell. This treatment by Mr. Farrell persisted despite plaintiff's explicit and consistent rejection of his advances. On or about March 1, 1978, defendant Farrell authored a memorandum "seriously questioning ... [plaintiff's] professional competence" and placed it in her personnel file. On June 4, 1981 defendant Farrell sexually assaulted plaintiff en route to a work-related meeting in a state owned vehicle. Defendant Farrell was suspended in November or December of 1982 and subsequently pleaded guilty to plaintiff's charges arising out of this incident in administrative proceedings on January 11, 1983. Defendant Farrell was ultimately transferred and demoted following the events described above.

In addition to these specific acts of defendant Farrell, the complaint alleges a retaliatory conspiracy between and among all the defendants with the end· of damaging plaintiff's professional reputation and driving her away from her job with the ADTC. In furtherance of this conspiracy, plaintiff alleged that defendants "badmouthed" her and other employees, accused her of incompetence and misuse of work time, failed to treat her as they treated similarly situated male employees, refused to allow her to resume work after a medical leave compelled by the above-described incidents, failed in their respective supervisory capacities to prevent further harassment of plaintiff and attempted to suborn perjury at the administrative proceedings resulting in defendant Farrell's demotion.

Initially, I address defendant Silverman's claim that this action is barred as untimely under the applicable statute of limitations. Defendant Silverman's argument rests on the contention that at bottom plaintiff's claim is one for sexual harassment, a claim most appropriately brought pursuant to federal or state statutes prohibiting discrimination in employment. Mr. Silverman argues that plaintiff's claim is time barred under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* (1976) (hereinafter Title VII) which makes the filing of a charge with the Equal Employment Opportunity Commission or analogous state agency within 180 days a jurisdictional prerequisite to federal court action under the Act. *See id.* at § 2000e–5(e); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Secondly, he argues that a suit under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* (1976) would be time barred by that statute's requirement that a. complaint be filed with the appropriate state agency or municipal office within 180 days. N.J.S.A. 10:5–18 (as amended effective 1980). Finally, he argues that the 180 day limitation period under the New Jersey Law Against Discrimination is applicable to plaintiff's claims under 42 U.S.C. §§ 1983, 1985(3) and 1986.

In support of the timeliness of her action, plaintiff asserts that her claims are constitutional in nature and that she seeks remedies not under Title VII or the state dis-

crimination law but under 42 U.S.C. §§ 1983, 1985(3), and 1986. Plaintiff agrees that state law provides the applicable limitations period in a suit under these statutes but argues that a six year period and not the 180 day period for administrative filing under the Law Against Discrimination applies to this action. I agree with plaintiff in this regard.

■ It is settled that the applicable limitations period to a suit under the Civil Rights Acts is the one that would apply to an action seeking analogous relief under state law. *See Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Aitchison v. Raffiani*, 708 F.2d 96, 101 (3d Cir.1983); *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir.1974) (en banc). As plaintiff correctly notes, "[s]election of the appropriate forum state statute of limitation requires characterization of the essential nature of the federal claim within the scheme created by the various state statutes of limitation." *Davis v. United States Steel Supply*, 581 F.2d 335, 337 (3d Cir.1978). The "essential nature" of the claim is determined from the facts alleged and the relief requested in the complaint. *Id.* at 338. The selection of the appropriate limitations period from state law for an action under the Civil Rights Acts is further guided by two competing principles. First, the Supreme Court has noted that state statutes of limitation are not merely "technical obstacle[s] to be circumvented if possible. In most cases they are binding rules of law." *Tomanio*, 446 U.S. at 484, 100 S.Ct. at 1795. Second, the Third Circuit has cautioned that in making the selection a federal district court should not be unmindful of the "remedial spirit of the federal Civil Rights Acts," *Knoll v. Springfield Township School District*, 699 F.2d 137, 143 (3d Cir.1983), and the nature of "the federal interest sought to be vindicated." *Id.* at 145.

■ In applying this analysis to the case before me, I find that the New Jersey limitations period which would apply to an analogous cause of action under state law is the residual six year period under N.J.S.A. 2A:14–1 and not the 180 day period for administrative filing under the Law Against Discrimination, N.J.S.A. 10:5–18. The essential nature of the federal claim in this case is sexual harassment in public employment, a claim which is legally cognizable as sex discrimination. The most closely analogous cause of action under the law of New Jersey is a suit pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1, 13.

The limitations period applicable to a court action to redress violations of this state statute is not entirely settled as a matter of New Jersey law. However, employing the same analysis as that called for in the selection of a state statute of limitations for a federal action under the Civil Rights Acts by a federal court, the state court which has passed on the question, concluded that the six year period under N.J.S.A. 2A:14–1 was applicable. *See Leese v. Doe*, 182 N.J.Super. 318, 320, 440 A.2d 1166 (Law Div.1981).

In *Leese*, the court looked at two possible limitations periods in New Jersey law: first, the two year period for "injury to the person". contained in N.J.S.A. 2A:14–2 and second, the six year period for tortious property damage recovery on a contract not between merchants, or "for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title" contained in N.J.S.A. 2A:14–1. *See Leese*, 182 N.J.Super. at 320, 440 A.2d 1166. Relying on *Davis* cited *supra*, the court concluded that an action seeking damages for sex discrimination in employment was more akin to one involving property damage or interference with rights under the employment contract than to a personal injury action. *See Leese*, 182 N.J. Super. at 321, 440 A.2d 1166; *see also Davis*, 581 F.2d at 338; *Kyriazi v. Western Electric Co. et al.*, 461 F.Supp. 894, 902 (D.N.J.1978), *aff'd*, 647 F.2d 388 (3d Cir. 1978), *vacated in part*, 473 F.Supp. 786 (D.N.J.1979). Calling the question of the limitations period applicable to actions un-

der the Law Against Discrimination "new", *Leese*, 182 N.J.Super. at 320, 440 A.2d 1166, the court assumed that the 180 day statutory period contained in N.J.S.A. 10:5–18 governed only administrative filings under the Act. *See* my discussion of this point *infra*.

I agree that the Law Against Discrimination does not set the limitations period for court actions to redress employment discrimination. The statute by its terms refers only to administrative filing in setting forth the limitations period. Although the provision for the initiation of a court action either before administrative filing or after a final administrative determination was first added to the statute in 1979, effective 1980, *see* N.J.S.A. 10:5–13, the section dealing with the limitations period was amended by the legislature in the same year. The amended section makes no mention of a separate limitations period for a court action pursuant to the Act nor does it make the 180 day limitations period applicable to the new statutory cause of action. Therefore, the limitations period applicable to this action must be selected from among those statutes of limitation available for actions seeking comparable relief at common law.[1]

■ I also agree with the court's determination in *Leese*, that as between the two year period for personal injury, N.J.S.A. 2A:14–2, and the six year period for contractual or other tortious injury, N.J.S.A. 2A:14–1, the latter applies to a case such as the one before me. I need not decide whether an action for employment discrimination is more akin to contract or tort because in either case the six year period

under N.J.S.A. 2A:14–1 applies to an action seeking the relief sought by plaintiff Skadegaard. *See Leese*, 182 N.J.Super. at 321, 440 A.2d 1166; *Davis*, 581 F.2d at 341. While a sexual assault is among the facts alleged by plaintiff, making this case distinguishable from the facts alleged in *Leese*, this is not an action for personal injury. Plaintiff seeks relief for a broad spectrum of alleged conduct and does not focus on the physical assault or on the physical harm it may or may not have caused. The relief sought by plaintiff is the key to characterization of a cause of action for statute of limitations purposes and as in *Davis*, "[i]n terms of legal relief, plaintiff's complaint does not seek damages for … bodily injury." *Davis*, 581 F.2d at 338. Instead, she seeks damages for "severe emotional distress, humiliation, loss of income and damage to her professional reputation." Having considered all possible limitation periods under New Jersey law in light of the essential nature of Ms. Skadegaard's complaint, I have determined that her action is governed by the six year period and is, therefore, timely.

■■ Defendant Silverman also raises the equitable defense of laches as to plaintiff's claims against him. He argues that because plaintiff never named him in her charges before the administrative tribunal she should be barred from naming him as a defendant in this action. Plaintiff had no duty to exhaust her administrative remedies before proceeding against Mr. Silverman in this action. Defendant's conclusory assertion that "… delay by the Plaintiff greatly prejudices the Defendant…", is insufficient ground for the exercise of this

---

**1.** I also note that the Law Against Discrimination provides that "[n]othing herein contained shall bar, exclude or otherwise affect any right or action, civil or criminal, which may exist independently" of those rights guaranteed by the Act. *See* N.J.S.A. 10:5–27; *see also, Lloyd v. Borough of Stone Harbour*, 179 N.J.Super. 496, 514, 432 A.2d 572 (Ch.Div.1981). In a sex discrimination action based on the New Jersey and United States Constitutions, the *Lloyd* court relied on this provision in refusing to apply the 180 day period. 179 N.J.Super. at 513–14. In *Lloyd*, the court found that the six year limita-

tions period was applicable to plaintiff's suit against individual municipal defendants. *Id.* In so doing the court found that the 180 day period in the Act could not be applied so as to "bar, exclude or otherwise affect" a plaintiff's constitutional rights. This approach is consistent with the concerns of the Third Circuit in the *Knoll* case that federal remedies for constitutional violations not be overly circumscribed by the adoption of state limitations periods, *see Knoll*, 699 F.2d at 141–42, and is relevant to the issue before me here.

court's equitable power to bar an action as unduly delayed though it is timely under the applicable statute of limitations. "Laches, of course, requires more than a lapse of time; as an equitable defense it is determined in the light of all the existing circumstances and requires that the delay be unreasonable and cause prejudice to the adversary." *Sobosle v. United States Steel Corp.*, 359 F.2d 7, 12–13 (3d Cir.1966) (footnote omitted). Since I find no basis in the record for a conclusion that defendant Silverman has been unfairly prejudiced by the claimed delay, I decline to hold plaintiff's claims against him barred by the doctrine of laches.

■ The remainder of the arguments made by defendants are appropriately conceived as arguments to dismiss plaintiff's complaint for failure to state a claim for relief under Rule 12(b)(6).[2] In treating these motions as motions to dismiss for failure to state a claim for relief under Rule 12(b)(6) I must "follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can produce no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). This standard requires me to take the facts alleged by plaintiff as true for purposes of these motions.

Defendants have raised six arguments in support of the dismissal of plaintiff's claims under 42 U.S.C. § 1983 and 1985(3). First, they argue that plaintiff has failed to state a violation of substantive constitutional rights sufficient to support her claims under the remedial Civil Rights Acts. Second, they argue that even if plaintiff has alleged a colorable claim under the Constitution she has failed to state a claim under the Civil Rights Acts because the doctrine of *Great American Federal Savings & Loan Association et al. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) bars claims under these Acts which are, at bottom, claims for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Third, they argue that § 1985(3) only provides a remedy for conspiracies to deprive a plaintiff of constitutional rights and, since the complaint is essentially a claim for relief under Title VII, plaintiff's § 1985(3) claims must be dismissed. Fourth, citing to *United Brotherhood of Carpenters v. Scott*, — U.S. —, 103 S.Ct. 3352, 77 L.Ed.2d 1049, *reh. denied*, — U.S. —, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983), defendants argue that the "class-based, invidiously discriminatory animus" that must be alleged in a claim under § 1985(3), *see Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), does not extend beyond race-based animus to sex-based animus as alleged by plaintiff. Fifth, defendants contend that a complaint alleging the discriminatory treatment of only one individual fails to state "class-based" animus in that it fails as a matter of law to support plaintiff's claim that she was harassed *because* of her sex. The sixth, and final argument raised by defendant Silverman, is that the complaint fails to allege sufficient facts to support the alleged conspiracy under § 1985(3) or his individual involvement in it.[3]

■ Section 1983 of 42 United States Code provides a cause of action in damages for the deprivation of federal rights.[4] Sec-

**2.** Defendant Farrell has, by letter to this court, requested that I not rule on his motion for summary judgment pending the completion of discovery.

**3.** I note that in marshalling these arguments, defendants do not appear to differentiate in any meaningful way between plaintiff's claims under § 1983 and § 1985(3). I too will treat the two sections as one wherever possible.

**4.** Section 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

tion 1985 of 42 U.S.C. deals with conspiracies to interfere with civil rights.[5] It is settled law that neither § 1983 nor § 1985(3) provide a plaintiff with substantive rights in themselves. They merely provide a remedy for violation of the designated federal rights. *See Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979) (discussing § 1983) and *Novotny,* 442 U.S. at 372, 376, 99 S.Ct. at 2351 (discussing § 1985(3)). In order, therefore, for a plaintiff to state a claim for relief under the foregoing statutory sections, she must allege violations of some underlying predicate right under the federal constitution or laws.

I turn first to defendants' argument that the conduct alleged in the complaint does not rise to the level of a constitutional violation and that the constitution may not, therefore, form the predicate for plaintiff's claims under the Civil Rights Acts. Defendants argue that if this court were to agree that plaintiff's complaint alleges conduct of constitutional magnitude, every passing overture made by a male public official to a female public employee because of her gender would constitute a denial of the equal protection of the laws to that employee. This, defendants argue, would trivialize the rights guaranteed by the Fourteenth Amendment. I do not agree.

■ Plaintiff has stated a claim that is cognizable under the Fourteenth Amendment. "An equal protection claim arises when an individual contends that he [or she] is receiving different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Salem School District,* 616 F.2d 676, 677 n. 1 (3d Cir.1980). The requirement of state action under the Fourteenth Amendment is satisfied if there is "involvement of a state official ... whether or not the actions ... were officially authorized, or lawful; *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961)". *Adickes v. Kress,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (other citations omitted). Since plaintiff here alleges that she was intentionally treated differently from men at the ADTC because of her sex by state officials, she has stated a claim for relief under the Equal Protection Clause.

While she must ultimately prove that the harassment was indeed because of her sex, an allegation in the complaint is sufficient to defeat a motion to dismiss under Rule 12(b)(6). *See Bleakley v. Jekyll Island—State Park Authority,* 536 F.Supp. 236, 240–41 (S.D.Ga.1982). There is no requirement under the Equal Protection Clause that plaintiff proceed by way of a class action under Rule 23 of the Federal Rules of Civil Procedure or that she allege that all or even many women at the ADTC were similarly harassed. *See id.; see also, Woerner v. Brzeczek,* 519 F.Supp. 517, 519–20 (N.D.Ill.1981) and my discussion of the meaning of "class-based" regarding

---

action at law, suit in equity, or other proper proceeding for redress.

**5.** Subsection (3) of Section 1985 reads as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to

vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

plaintiff's § 1985(3) claims *infra*. In *Arlington Heights v. Metropolitan Housing Corp.*, the Supreme Court noted that "a consistent pattern of official ... discrimination is [not] a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act ... would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions." 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977); *see also, Bleakley*, 536 F.Supp. at 241. Since plaintiff has unequivocally alleged that she was harassed because of her gender, her failure to allege that other women were so harassed does not affect her claim for relief.

■ Defendants have argued in their briefs and at oral argument that the conduct alleged by plaintiff in her complaint is trivial or *de minimus*. I do not agree. The allegations of the complaint, which I must take as true for purposes of this motion, portray a pattern of conduct on the part of defendants which is in flagrant disregard for plaintiff's right to equal treatment under the law. Plaintiff Skadegaard has alleged a pattern and practice of sexual harassment by her supervisor, defendant Farrell, and retaliatory conduct by all four defendants acting as co-conspirators. Defendants are high ranking officials at the ADTC facility. Plaintiff alleges that they conspired, under "color of state law", to treat her differently then similarly situated male psychologists on account of her gender and that they used their official power to cause harm to her professional reputation, to drive her from her job and to clothe and cover up their retaliatory conduct by false, unsubstantiated allegations of professional misconduct and incompetence on her part. As the facts indicate, some of the defendants to this action have already been chastised for their conduct by the State of New Jersey following administrative proceedings. In sum, the conduct alleged by plaintiff cannot be compared with a single, innocent, romantic solicitation which inadvertently causes offense to its recipient. I find,

therefore, that the conduct alleged in plaintiff's complaint does rise to the level of a constitutional violation.

In support of their argument that Ms. Skadegaard's claims are barred by the Supreme Court's holding in *Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) defendants contend that plaintiff may not obtain a remedy under § 1985(3) or, presumably, under § 1983 by alleging underlying violations of a federal statute such as Title VII which incorporates a complex remedial scheme of its own and which, they assert, forms the basis for the complaint in this case.

In *Novotny*, a male plaintiff alleged violations of both Title VII and § 1985(3) in two separate counts when he was fired by his private employer in retaliation for expressing support for female employees at a board of directors meeting. The question before the Supreme Court in that case was "whether the rights created by Title VII may be asserted within the remedial framework of § 1985(3)." *Id.* at 377, 99 S.Ct. at 2351. The court held that a right that "did not even arguably exist before the passage of Title VII," *id.* at 376–77, 99 S.Ct. at 2351, could not "be the basis for a cause of action under § 1985(3)." *Id.* at 378, 99 S.Ct. at 2352. After reviewing the breadth and specificity of the administrative and remedial scheme embodied in Title VII, the court stated that "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Id.* at 375–76, 99 S.Ct. at 2350. The Court, however, found it unnecessary "to consider whether a plaintiff would have a cause of action under § 1985(3) where the defendant was not subject to suit under Title VII or a comparable statute." *Id.* at 370 n. 6, 99 S.Ct. at 2348 n. 6. The Court specifically distinguished the *Novotny* case from those cases "involv[ing] two 'independent' rights," *id.* at 378, 99 S.Ct. at 2352, because in *Novotny* no substantive right besides Title VII was alleged as the predicate for the remedy sought by plaintiff under § 1985(3).

■ I find that the result in the case before me is not controlled by the *Novotny* holding. Unlike the *Novotny* case, plaintiff here has not alleged violations of Title VII by defendants. Instead, she has alleged violations of her rights under the. Fourteenth Amendment for which she seeks relief via §§ 1985(3) and 1983. Plaintiff's constitutional rights are undeniably "independent" of those provided in Title VII and, in fact, pre-dated the creation of rights under its statutory scheme by close to one hundred years. *See Knoll*, 699 F.2d at 145; *cf. Adickes v. Kress*, 398 U.S. 144, 151 n. 5, 90 S.Ct. 1598, 1604 n. 5, 26 L.Ed.2d 142 (1970) (holding that Fourteenth Amendment causes of action under 42 U.S.C. § 1983 are not precluded by the fact that the Public Accommodations Act provides relief for the same conduct). The plaintiff in *Novotny* was precluded from asserting similar claims under the Fourteenth Amendment because he was employed by a private employer. No state action was involved in that case. Here, by virtue of plaintiff Skadegaard's state employment, she has additional and independent rights vis-a-vis her employer which she has asserted. Defendants' assertions that such a holding gives public employees so victimized more rights than their privately employed counterparts finds its justification in the "state action" requirement of the Fourteenth Amendment which mandates this result.

I need not reach defendants' argument that § 1985(3) remedies only those rights derived from the constitution and not those derived from federal statutes, because I read the complaint as alleging constitutional violations.

I now consider defendants fourth argument that plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985(3) because the statute does not protect persons who claim to be victims of sex-based animus. This argument is addressed to the Supreme Court's interpretation of the statutory section in *Griffin*. In holding that § 1985(3) extends to purely private conspiracies, the Supreme Court in *Griffin* stated that the scope of the statute was not unlim-ited because "[t]he language requiring intent to deprive of . *equal* protection, or *equal* privileges and immunities, means that there must be some *racial, or perhaps otherwise class-based, invidiously discriminatory animus* behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798 (footnotes omitted) (emphasis added). In *Griffin*, the Court did not decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable" under § 1985(3). *Id.* at 102 n. 9, 91 S.Ct. at 1798 n. 9. Recently, in *United Brotherhood of Carpenters & Joiners v. Scott*, — U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049, the court once again refrained from deciding whether the remedial scope of § 1985(3) extends to "any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." *Id.* 103 S.Ct. at 3359.

■ It is settled law in the Third Circuit, however, that wherever the outer-boundaries of the reach of § 1985(3) may be drawn, discriminatory conspiracies motivated by sex-based animus are within the statute's intended scope. The Third Circuit, in its opinion in *Novotny*, 584 F.2d 1235, 1240–43 (3d Cir.1978), *vacated on other grounds*, discussed *supra*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), held that women are included within the remedial ambit of § 1985(3). Although this opinion was vacated by the Supreme Court because plaintiff had failed to allege a legally sufficient predicate violation of substantive law, *see* my discussion *supra*, subsequent cases in this Circuit have treated the *Novotny* holding regarding the scope of § 1985(3) as good law. *See C & K Coal Co. et al. v. United Mine Workers of America*, 704 F.2d 690, 700 (3d Cir.1983); *Schnabel v. Building and Construction Tracks Council of Philadelphia*, 563 F.Supp. 1030, 1039–42 (E.D.Pa.1983); *Horne v. Farrell*, 560 F.Supp. 219, 225–26 (M.D.Pa.1983). These cases adhere to the

reasoning of the Third Circuit's opinion in *Novotny* which embraced "[t]he principle that individuals should not be discriminated against on the basis of traits for which they bear no responsibility...." *Novotny*, 584 F.2d at 1243. The Court found that "[t]he fact that a person bears no responsibility for gender, combined with the pervasive discrimination practiced against women, and the emerging rejection of sexual stereotyping as incompatible with our ideals of equality convince us that whatever the outer boundaries of the concept, an animus directed against women includes the elements of a 'class-based invidiously discriminatory' motivation." *Id.* (footnotes omitted).

■ Based on the plain language of the statute which extends its reach to "any person or class of persons" as well as upon the legislative history cited by the Third Circuit in *Novotny* and acknowledged by the Supreme Court in *Scott*, 103 S.Ct. at 3359–60, it is clear that § 1985(3) provides plaintiff and other women with a remedy for the violation of their constitutional rights. *Scott* does not hold otherwise. I recognize that the Court in *Scott* considered it a close question "whether § 1985(3), as enacted, went any farther than its central concern—combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended affects [sic] of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Scott*, 103 S.Ct. at 3360.[6] However, the Court in *Scott* was asked to extend the reach of § 1985(3) to remedy purely private group actions resting on economic motivation or "anti-union, anti-nonunion, or anti-employer biases." In *Scott*, the Court only held that it could not "construe § 1985(3) to

reach conspiracies motivated by economic or commercial animus." 103 S.Ct. at 3360. In so holding, the Court cited to the special nature of economic and commercial conflicts and to the special role of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* in structuring the employer-employee relationship. *Scott*, 103 S.Ct. at 3360–61. Interpreting the legislative history of § 1985(3) the Court explicitly did not preclude a construction that would permit the provision to reach even politically motivated conspiracies. *Id.* 103 S.Ct. at 3360.

■ While the facts in *Scott* may have presented a close question, the facts before me in this case do not. As the Third Circuit recognized in *Novotny*, the immutability of gender together with the undisputed history of discrimination against women in this country combine to give sex-based animus all the attributes of an invidiously discriminatory one. 584 F.2d 1235, 1243; *see also, Frontiero v. Richardson*, 411 U.S. 677, 687, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). In holding that a conspiracy to deprive plaintiff of her rights which is motivated by sex-based animus may be remedied in an action for damages pursuant to § 1985(3), I am not unaware that some court's have read *Scott* more restrictively. *See, e.g., Wilhelm v. Continental Title Co. et al.*, 720 F.2d 1173 (10th Cir.1983) (handicapped persons not a class within § 1985(3)). However, the Supreme Court has not yet foreclosed the inclusion of sex-based animus within the scope of § 1985(3) and the Third Circuit is not alone in holding that it is indeed included. *See Novotny*, 584 F.2d at 1243–1244; *see, e.g., Conroy v. Conroy*, 575 F.2d 175, 177 (8th Cir.1978); *Griffin Meiners v. Moriarity*, 563 F.2d 343, 348 (7th Cir.1977).[7]

**6.** Even if this was the "central concern" of Congress at the time the Act was passed, I note that similar arguments were used regarding the intended scope of the Fourteenth Amendment itself. However, despite the historical context of its ratification, the Amendment has been construed to extend even its elevated scrutiny to women as a class. *E.g., Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). I believe that since the statute was indeed passed to provide a damages remedy for Fourteenth

Amendment violations, it must be construed to extend as far as the Amendment itself, that is to include sex-based animus at the least.

**7.** It has never been seriously contested that a claim under § 1983 properly lies for intentionally discriminatory treatment based on gender in violation of the Fourteenth Amendment. *See, e.g., Knoll*, 699 F.2d 137; *Lyon v. Temple University*, 507 F.Supp. 471, 477–78 (E.D.Pa. 1981).

I turn now to defendants' fifth argument, that the complaint is somehow deficient in that it alleges the sexual harassment of only one woman, and therefore, fails to plead that the alleged harassment of plaintiff was class-based, in other words, occurred because of her sex. This argument is not altogether unrelated to some of those raised by defendants regarding plaintiff's underlying constitutional claim. For the reasons set forth in my discussion of defendants' first argument, I find that plaintiff has stated a claim for relief under § 1985(3) which is unaffected, as a matter of law, on a motion under Rule 12(b)(6), by her failure to allege that other women at the ADTC facility were sexually or otherwise harassed by defendants.

Defendants' argument that an allegation of discriminatory treatment against plaintiff alone is not "class-based" within the meaning of *Griffin*, misconstrues the meaning of class-based and the nature of a 12(b)(6) motion. I find that what is meant by the term is that plaintiff must be a member of a discernable class within the remedial ambit of § 1985(3) and must allege that the invidiously discriminatory animus giving rise to the conspiracy is based upon plaintiff's membership in that class.[8] In other words, plaintiff must allege that she was the object of the alleged conspiracy because of her sex and that the conspiracy was to deprive her of her rights to equal treatment with members of the opposite sex. She is not required to allege that the racial animus or discriminatory treatment was class-wide in its application by defendants. As previously noted, plaintiff does allege that she was the object of discriminatory animus based on her membership in a class which is within the scope of § 1985(3). Consequently, the complaint may not be dismissed on this ground. *Cf. Bleakley v. Jekyll Island—State Park Authority*, 536 F.Supp. at 240–41 and *Woerner*, 519 F.Supp. at 519–20 (discussing the

requirements of an Equal Protection claim in the context of 42 U.S.C. § 1983 remedies). In the *Huebschen* case on which defendants rely so heavily, the Seventh Circuit Court of Appeals, was reviewing a full factual record on appeal from a jury trial in which the parties were put to their proof. *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir. 1983). The case does not, therefore, support dismissal on a 12(b)(6) motion. Defendants also rely on *Hauptmann v. Wilentz*, 570 F.Supp. 351 (D.N.J.1983), a recent opinion by Judge Lacey in a case involving § 1985(3) claims. In *Hauptmann*, Judge Lacey stated that "[i]f the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement." *Id.* at 386. While on its face this statement supports defendants contentions, taken in context the statement is not relevant to this question. The court was there considering whether plaintiff's German heritage made him a member of a class protected by § 1985(3) and, if so, whether plaintiff had alleged facts to sustain a claim for relief on that ground. The court excluded "individual" discrimination from the § 1985(3) spectrum in its discussion of the alleged reasons for discriminatory animus and was not suggesting that plaintiff had to allege the similar treatment of other Germans in order to survive a motion to dismiss. A review of the cases cited by Judge Lacey support this conclusion. *See Hauptmann*, 570 F.Supp. at 386 (and cases cited therein). While I note once again that plaintiff must ultimately prove that defendants were motivated by class-based invidiously discriminatory animus rather than by some other personal vendetta or attraction, her allegations are sufficient on a motion to dismiss. Both plaintiff and defendants must, as in *Huebschen*, be put to their proof.

---

8. I note that plaintiff has not, as in the cases referred to in footnote 5 of defendant Silverman's Brief, defined the class of which she is a member by virtue of defendants' alleged wrongful conduct alone. Instead, she claims to be a member of a class which is gender-defined, an immutable characteristic for which neither she, nor defendants, have responsibility. *See* my discussion *supra*.

The final argument in this regard made by defendant Silverman is that plaintiff has failed to allege facts which substantiate a § 1985(3) conspiracy or defendant Silverman's involvement in the conspiracy as a matter of law. While plaintiff may ultimately fail to prove the conspiracy she alleges, I cannot say as a matter of law that she will not. She has alleged facts with sufficient specificity which, if proved, would permit a trier of fact to infer intent and agreement in furtherance of illegal goals as required under the law of conspiracy. The complaint here is rich in detail. *See Hauptmann,* 570 F.Supp. at 385. Since I find, as a matter of law, that plaintiff could prove a set of facts in support of her claim which would entitle her to relief, *see Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102, I will not dismiss her claims on this ground.

▮ Since a claim under 42 U.S.C. § 1986 is derivative in nature,[9] *see Hauptmann,* 570 F.Supp. at 387, plaintiff's § 1986 claim remains viable in light of my holding that she has stated a claim for relief under §§ 1983 and 1985(3). Similarly, I conclude that plaintiff's pendent state law claims remain within the jurisdiction of this court.

▮ One matter remains for my consideration at this time. Defendant Mintz has moved this court to strike paragraph 55 of the complaint as "scandalous matter" under Rule 12(f) of the Federal Rules. I have decided to deny this motion. Paragraph 55 states in relevant part:

> On information and belief, just prior to that [administrative] hearing, defendants Farrell and Mintz attempted to suborn perjury from witnesses scheduled to attend the aforesaid DOC hearing. Their subornation was done in furtherance of defendants' conspiracy.

I start with the proposition that "[m]otions to strike alleged redundant, immaterial, impertinent or scandalous matter are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." 2A Moore's Federal Practice ¶ 12.21 at p. 2429 (1983) (footnotes omitted). Defendant argues that paragraph 55 is scandalous in that it "improperly and excessively impugn[s] his moral character" without factual basis. Scandalous pleading for purposes of Rule 12(f) must "reflect cruelly" upon the defendant's moral character, use "repulsive language" or "detract from the dignity of the court." *Id.* at p. 2426 (footnote omitted). I do not believe that paragraph 55 should be stricken under this standard. To be scandalous such "degrading charges [must] be irrelevant, or, if relevant, [must be] gone into in unnecessary detail...." *Id.* at 2427. I find paragraph 55 to be neither unnecessarily derogatory nor irrelevant to charges alleged by plaintiff in this action.

In sum, I have concluded, first, that plaintiff's claims are timely under New Jersey's six year statute of limitations; second, that her claims are not barred by the equitable doctrine of laches; third, that she does not proceed under Title VII but instead states a claim for relief under the Equal Protection Clause of the Fourteenth Amendment; fourth that the complaint alleges a deprivation of plaintiff's rights by defendants acting "under color of state law" for purposes of 42 U.S.C. § 1983; fifth, that plaintiff is a member of a class protected by § 1985(3); and sixth, that she has properly alleged a conspiracy, motivated by class-based discriminatory animus, to deprive her of her rights to equal protection under that section. I have, therefore, concluded that plaintiff states a valid claim for relief under §§ 1983 and 1985(3) for violation of her constitutional rights which is not barred by the Supreme Court's holding in *Novotny* and which is not scandalous under a Rule 12(f) standard. All motions by all defendants currently before me are denied.

---

**9.** Section 1986 provides a damages remedy against one who fails to prevent a § 1985(3) conspiracy.