**Albert D'AURIZIO, Plaintiff,**

**v.**

**PALISADES PARK, et al., Defendants.**

**Civil No. 93–4417(JAG).**

United States District Court,
D. New Jersey.

April 29, 1997.

---

Sharon Handrock Moore, Gebbardt & Kiefer, P.C., Clinton, NJ, for Borough of Palisades Park.

Joseph J. Rotolo, Hackensack, NJ, for William Maresca, Paul Albanese.

Donald L. Crowley, Methfessel & Werbel, P.C., Rahway, NJ, for Board of Education of Palisades Park.

Frank M. O'Shea, Shapeze & McLaughlin, Englewood Cliffs, NJ, for David Eichenholtz.

Dennis J. Oury, Oury & Mizdol, Hackensack, NJ, for Thomas Tuscano, George Fasciano.

Virginia De Bartolo, Palisades Park, pro se.

Susan Giacobone, Palisades Park, pro se.

Scott G. Sproviero, Sinisi, Van Dam & Sproviero, Paramus, NJ, for Carmine Verdicchio, James Nichols.

John Paxton, Melli & Wright, Paramus, NJ, for Smith, Don, Alampi & D'Argenio.

Matthew Nicholas, Palisades Park, NJ, pro se.

Peter Marose, Harrington Park, NJ, pro se.

Mary Beth Cottrell, Palisades Park, NJ, pro se.

Robert Carney, Palisades Park, NJ, pro se.

Francis Valenzuela, Palisades Park, NJ, pro se.

Michael DeBartolo, Palisades Park, NJ, pro se.

Carol Killion, Palisades Park, NJ, pro se.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion to dismiss, or alternatively for summary judgment, of Oury & Mizdol, P.C., attorneys for defendants Thomas Tuscano and George Fasciano. Because both parties present extrinsic material, the Court will treat this motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.

### PRELIMINARY STATEMENT

Plaintiff Albert D'Aurizio ("D'Aurizio"), and his wife Debbie, are members of a large and politically active family in the Borough of Palisades Park (the "Borough"). For years, the D'Aurizios participated in local Republican and school board politics. D'Aurizio's sister-in-law, Carol Killion (one of the defendants in this case), was president of the Palisades Park Board of Education (hereinafter, the "Board"). All of the defendants in this case are individuals D'Aurizio knows through his involvement in local politics; they include William Maresca, the Republican Mayor of the Borough between 1991 and November 1995, and various members of the Board and the Borough Council. In short, D'Aurizio's claims against the defendants stem from his belief that because he ran for a seat on the Council in 1991 as an independent, as opposed to a Republican candidate, the defendants—all, except for one, who are affiliated with the Republican party—participated in a conspiracy to fire him from his

Board-appointed position as a school custodian. In addition, D'Aurizio claims that subsequent to the elimination of his custodial position in June 1992, defendants continued their conspiracy against him by ensuring that the Board did not place his name on the part-time custodial roster in December 1992, thereby precluding him from exercising his alleged right of first refusal.

## FACTS

Defendant George Fasciano ("Fasciano") was the Palisades Park Superintendent of Schools from approximately 1990 through November 1992.[1] As Superintendent, Fasciano did not vote on any action taken by the Board but he could make recommendations to the Board. Defendant Thomas J. Tuscano ("Tuscano") is, and was at all relevant times, the Republican Municipal Chairman in Palisades Park. Tuscano is not a public official. His position as Republican Municipal Chairman requires him only to conduct the Palisades Park County Committee meetings. Ex. D.[2]

### D'Aurizio's Candidacy

In April 1991, D'Aurizio, a former Republican, announced his candidacy as an independent candidate for a seat on the Council. In late May or early June 1991, the Board hired D'Aurizio as a part-time custodian. In August 1991, the Board decided, by vote, to make D'Aurizio a full-time custodian. In November 1991, D'Aurizio ran for Council against the Republican ticket and lost. D'Aurizio's alleges that his campaign caused

a division among the local Republicans. Amended Complaint ¶ 27.

### 1992–1993 School Budget

In approximately December 1991, the budget process for the Borough's 1992–1993 school year began. On February 4, 1992, the Board met to discuss preliminary cuts to the budget; these cuts included the elimination of one custodial position (a $30,000 cut) and two maintenance positions (a $60,000 cut). Sherwood Dep., at 174–75.[3]

Fasciano testified at his deposition that he objected to the Board's proposed cuts to the budget—i.e., the elimination of one custodial and two maintenance positions. Ex. A, at 204–05. Ms. Killion confirmed Fasciano's testimony, stating that Mr. Fasciano "did not recommend it [the cuts]." Ex. L, Killion (5/26/95) Dep., at 546. Ms. Killion also testified that Mr. Tuscano did not give her "any inkling of anything"—i.e., as to whether he supported the proposed cuts to the school budget. Ex. I.

On March 17, 1992, the Board presented its 1992–1993 school budget—with the proposed cuts—at a public hearing. Eichenholtz Dep., at 247.[4] On or about April 7, 1992, the Borough voters defeated the school budget. Killion Dep., at 586–87.[5] As a result, on April 22 and April 26, 1992, the Board, the Mayor (Maresca) and the Council met to review the budget and to determine if they could make any other cuts.[6] These were open meetings mandated by New Jersey State statute and recited in the Council's School Board Budget Resolution, passed on April 27, 1992 ("hereinafter, the 'April 27

1. The parties do not specify the exact dates when Fasciano was Superintendent but they do not dispute that he held this position during 1991 and that he left some time prior to November 1992. Accordingly, it is undisputed that Fasciano left before the Board implemented its part-time custodial list.

2. References in the form "Ex.——" are to the exhibits attached to the moving defendants' brief in support of this motion.

3. Deposition of Linda A. Sherwood, sworn to on June 13, 1995.

4. Deposition of David Eichenholtz, sworn to on January 4, 1996.

5. Deposition of Carol Killion, sworn to on May 23, 1995.

6. Pursuant to New Jersey State statutory law, school budgets in New Jersey are created in the following way: (1) the school Board develops a budget, N.J.S.A. 18A:22–32; (2) the dollar amount needed to support the budget is then presented to the voters, N.J.S.A. 18A:22–33; and (3) if the budget passes, the process ends but if it is defeated the Mayor and the Council are mandated to examine the budget and to determine if there are areas where cuts can be made. N.J.S.A. 18A:22–37.

Budget Resolution' ").[7]

### Conspiracy Meetings

D'Aurizio alleges that in addition to the two mandated meetings, members of the "Republican majority" from the Borough secretly met in April,[8] and again on June 9, 1992, to conspire to eliminate D'Aurizio's position as a school custodian, i.e., in retaliation for his 1991 independent candidacy for Council.[9] Amended Complaint ¶ 32. Specifically, D'Aurizio claims that Michael DeBartolo,[10] the campaign manager for D'Aurizio's Republican opponent in the November 1991 election, stated at the secret meeting in April: "We're getting rid of Al [D'Aurizio] because he ran against us." *Id.* D'Aurizio adds that all the other Republican members of the Board tacitly agreed with DeBartolo's suggestion "by nodding, or other acts showing ratification of the conspiracy proposal." *Id.*

However, D'Aurizio testified at his deposition that his basis for believing that the defendants secretly met, both in April and in June, came only from alleged conversations he had with Carol Killion (his sister-in-law), *see* D'Aurizio Dep., at 127–28, and defendant Peter Marose, a Democratic member of the Board. *Id.* at 135–36. Indeed, D'Aurizio admitted at his deposition that other than what he could "surmise" from these two conversations, he had no other knowledge of the alleged secret meeting, which he believes occurred some time in April. *Id.* at 136 & 139–40. In addition, Ms. Killion stated at her deposition that the April meeting was "an open meeting and anyone could have

come." Killion Dep., at 105–06. Moreover, when questioned about his conversation with Ms. Killion regarding the alleged secret meeting in April, D'Aurizio responded: "I do not recall exactly how we found out from her [Ms. Killion]." D'Aurizio Dep., at 127–28.

Ms. Killion also admitted at her deposition that the June meeting was an open Republican meeting, held at the law offices of Rotolo & Rotolo, to discuss the vacant seat on the Board. Killion Dep., at 178–86. In addition, Ms. Killion testified that D'Aurizio's name was not even mentioned during this June meeting other than in a private, side conversation she (Ms. Killion) had with Mr. Albanese, the content of which was: "Paul, Paul [Albanese], come on, this is my brother-in-law", to which Mr. Albanese allegedly responded "well, fire them all." *Id.* at 101. Tuscano testified that he attended the June 7 meeting but that he did not get there until it was just "breaking up." Ex. F, Tuscano Dep., at 186.[11]

### D'Aurizio's Termination

On June 2, 1992, the Board informed D'Aurizio by letter that his job would be discussed at the June 9 meeting. D'Aurizio Dec. ¶ 21. On June 9, 1992, the Board voted to eliminate one custodian and two maintenance positions. In short, D'Aurizio's custodian job was officially terminated. *Id.* However, there is no evidence that Fasciano concurred in this decision; in fact, defendants provide the Court with Ms. Killion's deposition testimony, which indicates just the opposite, that "Mr. Fasciano knew that Al [D'Aurizio] was

---

7. A copy of the April 27 Resolution is attached as Exhibit D to the summary judgment motion filed by Methfessel & Werbel, Esqs., on behalf of the Board defendants, in their official capacities. On page 1 of the initial papers filed in support of the instant motion, the attorneys for Tuscano and Fasciano specifically incorporate the brief filed by Methfessel & Werbel on behalf of the Board defendants.

8. D'Aurizio does not provide the exact date of the alleged secret meeting in April.

9. D'Aurizio alleges that Maresca, Republican Board members—Michael DeBartolo, Mathew Nichols, Robert Carney, Ms. Killion, and Mary Beth Cottrell, and Democrats—Fred Knopp, John Madisench and Chris Brown, attended the secret meeting in April. D'Aurizio further alleg-

es that the same people attended the secret meeting in June, along with Tuscano and Republicans, Virginia DeBartolo (Borough official), Paul Albanese (Borough Council) and Susan Giacobone (executive member of Palisades Park Republican Party). D'Aurizio also claims that the secret meeting in June was held in the conference room of a local law firm, Rotolo & Rotolo.

10. Mr. DeBartolo is also a defendant in this case.

11. D'Aurizio does not allege that either Fasciano or Tuscano attended the secret meeting in April. He does, however, allege that Tuscano attended the June meeting but Tuscano testified he did not get to the meeting until after it was over.

losing his job or was going to lose his job, and he just said he would try to help him any way that he could." Ex. M, Killion (5/26/95) Dep.. at 645.

### The Complaint

On October 4, 1993, D'Aurizio filed his initial Complaint in this case. On February 14, 1994, D'Aurizio filed an Amended Complaint, seeking relief against the defendants for: (1) conspiring to violate his First Amendment rights of freedom of association, freedom of speech, freedom to vote and his Fourteenth Amendment rights to equal protection and procedural and substantive due process; (2) violating his First Amendment rights of freedom of association, freedom of speech, freedom to vote and his Fourteenth Amendment rights to equal protection and procedural and substantive due process; (3) conspiring to violate 42 U.S.C. §§ 1983 and 1985; (4) violating 42 U.S.C. §§ 1983, 1985 and 1986; (5) violating New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to:5-42; and (6) tortious interference.

### DISCUSSION

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a

material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

### 42 U.S.C. § 1983

██ To state a claim under 42 U.S.C. § 1983 ("section 1983"), a plaintiff must allege two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived plaintiff of rights, privileges or immunities secured by the U.S. Constitution or laws of the United States.[12] *See West v. Atkins,* 487 U.S. 42, 48–49, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir.1990); *McArdle v. Tronetti,* 769 F.Supp. 188, 190 (W.D.Pa.1991), *aff'd.* 961 F.2d 1083 (3d Cir.1992).

#### i. Color of State Law

██ In most contexts, the section 1983 "acting under color of state law" inquiry is identical to the "state action" requirement under the Fourteenth Amendment. *Groman v. Township of Manalapan,* 47 F.3d 628, 638 n. 15 (3d Cir.1995) (citing *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 427 n. 3 (3d Cir.1988)). Thus, "[w]here the actors are not state or municipal officials, but are private individuals or associations … their activity can nevertheless be deemed to be under color of law." *Id.* at 638. In short, a private party is converted into a state actor where "he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Company. Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754,

---

12. Specifically, 42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

73 L.Ed.2d 482 (1982) (1982).[13] However, a private action "is not converted into one under color of state law merely by some tenuous connection to the state action. The issue is not whether the state was involved in some way in the relevant events but whether the action taken can be fairly attributed to the state itself." *Groman,* 47 F.3d at 638–39 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). Moreover, because the "under color of state law" requirement is part of the prima facie case for a section 1983 claim, "the plaintiff bears the burden of proof on that issue." *Id.* at 638 (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988)).

■ Tuscano is not a public official. His position as the Republican Municipal Chairman requires him only to conduct meetings of the Palisades Park County Committee. Moreover, D'Aurizio has not established that Tuscano's private party status should be converted into that of a state actor; in short, there is no evidence that Tuscano acted "together with or has obtained significant aid from state officials[.]" *See Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754. Indeed, according to Ms. Killion, Tuscano "never gave [her] an inkling of anything"—i.e., his views on whether or not the Board should adopt the proposed cuts to the budget. Ex. I. In addition, D'Aurizio does not even allege that Tuscano was at the secret meeting held in April; and, as to the June 7 meeting, Tuscano testified that he did not even get there until after it had broken up. Accordingly, D'Aurizio alleges no facts which convert Tuscano, a private party, into an official acting "under color of state law." Therefore, D'Aurizio's

section 1983 claim against Tuscano is dismissed.

### ii. *Discrimination based on Political Association*

■ To make out a prima facie case of discrimination based on political association—i.e., pursuant to the First amendment—a public employee must prove:

(1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision.

*Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995) (citing *Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); *Perez v. Cucci,* 725 F.Supp. 209, 238–39 (D.N.J.1989), *aff'd,* 898 F.2d 139 (3d Cir. 1990)).[14] If the plaintiff-employee is able to show his political association is a substantial or motivating factor in the adverse employment decision, the burden shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Robertson,* 62 F.3d at 599 (citations omitted); *Raniero v. Antun,* 943 F.Supp. 413, 423 (D.N.J.1996) (citations omitted).

■ In this case, D'Aurizio contends that he was fired from his custodian position because of his political association.[15] However, D'Aurizio's evidence amounts to no more

---

**13.** *See also Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 621–22, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991) ("in determining whether a particular course of conduct is governmental in character, it is relevant to examine . . . the extent to which the actor relies on governmental assistance and benefits; . . . whether the actor is performing a traditional governmental function; . . . and whether the inquiry caused is aggravated in a unique way by the incidents of governmental authority.")

**14.** "[A]n employee can show a protected political affiliation even if he or she is a member of the

same political party as his or her employer so long as the employer and employee are members of competing identifiable factions within that same party." *Christy v. Pennsylvania Turnpike Commission,* 904 F.Supp. 427, 430 n. 3 (E.D.Pa. 1995).

**15.** Specifically, D'Aurizio's section 1983 claim stems from his allegations that the defendants violated his First and Fourteenth Amendment rights by discriminating against him because of his political association.

than conclusory allegations that he spoke to two individuals, one of whom is his sister-in-law, who told him the defendants secretly met and conspired to eliminate his custodian position with the Board.

■ Moreover, assuming *arguendo* that D'Aurizio was to make out a prima facie case of discrimination, defendants provide the Court with ample documentary and testimonial evidence demonstrating that the Borough's April 27 Budget Resolution (which eliminated D'Aurizio's job), as well as the Board's prior cuts to the budget, were motivated by nothing more than a legitimately perceived need to reduce the school budget. In addition, D'Aurizio does not even allege that either Fasciano or Tuscano attended the secret meeting in April. D'Aurizio does allege that Tuscano attended the June 7 meeting; however, this evidence is nullified by Tuscano's testimony that he arrived at the June 7 meeting when the meeting was just "breaking up." Ex. F, Tuscano Dep., at 186. Furthermore, as Superintendent of the Schools, Fasciano did not vote on any of the Board's actions. Indeed, Fasciano testified at his deposition that he objected to the Board's proposed cuts to the budget, i.e., the elimination of one custodial and two maintenance positions. Ex. A, at 204–05. Ms. Killion confirmed Fasciano's testimony, stating that Mr. Fasciano "did not recommend it [the cut]." Ex. L, Killion (5/26/95) Dep., at 546. Ms. Killion also testified that Mr. Tuscano did not give her "any inkling of anything" as to whether he supported the proposed cuts to the school budget. Ex. I.

Accordingly, D'Aurizio has failed to show that his 1991 independent candidacy for Council—and thus his political association—was a "substantial or motivating factor" in the Board's decision to eliminate his custodian position; moreover, even if he had proven discrimination by the Board, D'Aurizio provides no evidence that the defendants, Fasciano and Tuscano, even participated in the decision to eliminate his job. Therefore, D'Aurizio's First Amendment claim, and consequently his section 1983 claim, against defendants Fasciano and Tuscano is dismissed.[16]

### 42 U.S.C. § 1985

■ To establish a claim in violation of the first clause [17] of 42 U.S.C. § 1985(3) ("section 1985(3)"), the plaintiff must allege and prove four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Deblasio v. Zoning Bd. of Adjustment for the Township of West Amwell*, 820 F.Supp. 876, 885 (D.N.J.1993) (quoting *Wagner v. Township of Harmar*, 651 F.Supp. 1286 (W.D.Pa.), *aff'd*, 826 F.2d 1058 (3d Cir.1987)) (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO, et al. v. Scott et al.*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983)). Courts have construed the second element to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268–69, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir.1986). Thus, for example, an allegation by a plaintiff "that he was discriminated against because he was not a political insider ... fails to allege that he is part of any protected class which would bring him

---

**16.** D'Aurizio's has also failed to present sufficient evidence to substantiate his Fourteenth and Fifteenth Amendment claims against the defendants. D'Aurizio's section 1983 claim, premised on his Fourteenth and Fifteenth Amendment claims, is therefore also dismissed.

**17.** The first clause of section 1985(3) states, in pertinent part: "If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]"

under the protection of § 1985." *Deblasio,* 820 F.Supp. at 885.

In this case, even if D'Aurizio could prove the conspiracy and injury elements of his section 1985(3) claim against the defendants, he does not allege that the defendants' actions were motivated by "racial or other class-based invidiously discriminatory animus." Rather, here D'Aurizio is merely claiming that the defendants conspired against him, individually, because of his political association.

Accordingly, D'Aurizio's section 1985(3) claim against the defendants is dismissed.

### *42 U.S.C. § 1986*

42 U.S.C. § 1986 ("section 1986") provides a damages remedy against an individual who fails to prevent a section 1985(3) conspiracy. *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1221 n. 9 (D.N.J.1984). Thus, all claims under section 1986 are derivative in nature, requiring a valid underlying section 1985(3) claim. *Id.* at 1221 (citing *Hauptmann v. Wilentz,* 570 F.Supp. 351, 387 (D.N.J.1983)); *see also Bowman v. Bank of Delaware,* 666 F.Supp. 63, 64 (D.Del.1987) ("[i]f the complaint does not state a § 1985(3) cause of action, then any § 1986 claim must fail as well.") In addition, there is a one year statute of limitations for section 1986 claims. *Marino v. Bowers,* 483 F.Supp. 765, 769 (E.D.Pa.1980), *aff'd,* 657 F.2d 1363 (3d Cir. 1981).

Accordingly, D'Aurizio's section 1986 claim in this case fails both because (1) he does not state a valid section 1985(3) claim against the defendants; and (2) he waited for more than one year to file his claim.[18]

### *Pendent Jurisdiction*

This Court cannot exercise pendent jurisdiction over state law claims unless, at a minimum, there is:

a federal claim of sufficient substance to confer subject matter jurisdiction on the court. The substantiality of the federal claim is ordinarily determined on the basis of the pleadings. If it appears that the federal claim is subject to dismissal under F.R. Civ. P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.

*Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195–96 (3d Cir.1976) (citations omitted); *see also University of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d 1534, 1540 (3d Cir.1993).

D'Aurizio alleges state law claims— tortious interference and LAD violations— against the moving defendants. However, D'Aurizio's federal civil rights claims are subject to dismissal by this Court and there are no "extraordinary circumstances" justifying retention of pendent jurisdiction over the state law claims in this case.

Accordingly, defendants' summary judgment motion for an Order of dismissal of plaintiff D'Aurizio's Amended Complaint as to defendants Thomas Tuscano and George Fasciano is hereby granted.

### ORDER

This matter having been opened to the Court by Oury & Mizdol, P.C., attorneys for defendants Thomas Tuscano and George Fasciano, and the Court having considered the submissions of the parties, and good cause appearing,

IT IS on this 28th day of April, 1997

ORDERED that defendants' motion for summary judgment, pursuant to Fed. R.Civ.P. 56(c), for an Order of dismissal of plaintiff's Amended Complaint with respect to defendants Thomas Tuscano and George Fasciano be and hereby is granted; and

IT IS FURTHER ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.

---

18. D'Aurizio's section 1986 claim accrued no later than June 9, 1992, when he lost his custodian position with the Board. D'Aurizio filed his initial Complaint on October 4, 1993, more than one year later.