**Alfred DEBLASIO, Plaintiff,**

v.

**ZONING BOARD OF ADJUSTMENT FOR the TOWNSHIP OF WEST AMWELL, et al., Defendant.**

Civ. No. 92–926 (CSF).

United States District Court, D. New Jersey.

May 6, 1993.

Smith & Laquercia by Nicholas R. Perrella, Trenton, NJ, for plaintiff.

Fox, Rothschild, O'Brien & Frankel by Mark L. First, Princeton, NJ, for defendants Zoning Bd. of Adjustment for The Tp. of West Amwell, Harry K. Rush, Raymond G. Lindblad and Charles A. Britton.

Brotman & Graziano by Ivan C. Bash, Trenton, NJ, for defendants Mr. and Mrs. James Lavan.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court are two motions for summary judgment. First is a motion brought by plaintiff, Alfred Deblasio, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the court is a motion brought by defendants the Zoning Board of Adjustment for West Amwell Township (ZBA) and its members (ZBA defendants) for summary judgment or, in the alternative, to dismiss the complaint. Defendants Mr. and Mrs. James Lavan, plaintiff's next-door neighbors, have requested that they be joined in the motion brought by the ZBA and the ZBA defendants. The court has granted their request. For the reasons set forth below, plaintiff's motion is denied and defendants' motion is granted.

## A. FACTS

Plaintiff is the present owner of a parcel of land (the property) located in West Amwell Township, New Jersey. Although the property is now in an R–3 (three-acre minimum residential) zone, it is undisputed that the property contains an exemption from the zoning restrictions because of a nonconforming use by its prior owners, specifically an auto body repair shop, which predated the adoption of the West Amwell Zoning ordinance (ordinance).

In the mid–1960s, George Guidotti purchased the property from Earl Brown, who had operated a general auto and auto body repair shop at the site. Brown's use was nonconforming. Following Guidotti's purchase of the property from Brown, the former also operated an automobile repair shop.

In 1967, after the ordinance was enacted, Gisella Niemier, a neighbor to the property, challenged the existence of the automobile repair shop on the property, alleging it was inconsistent with the R–3 zoning ordinance. Although Niemier was aware that the property, when previously owned by Brown, had been used as an automobile repair shop, she claimed that the use had been abandoned by Brown prior to the sale of the property to Guidotti. In the alternative, Niemier claimed that even if the use had not been abandoned, Guidotti's use was an expansion of the pre-existing use.

After conducting a hearing, the ZBA determined that the use had not been abandoned and that Guidotti's use of the property as an automobile repair shop did not constitute an impermissible expansion of Brown's pre-existing nonconforming use and was within the limits of the use of the property when owned by Brown.

Plaintiff purchased the property from Guidotti in or about 1974. Thereafter, he filed an application with the ZBA for a variance to use the property for the storage of drywall construction materials and as the principal place for a drywall business. On December 23, 1974, following a hearing, the ZBA denied the application for the variance, concluding that such a business would be detrimental to the welfare of the Township. The plaintiff did not appeal this decision.

In 1979, plaintiff leased the property to Peter Holmes, the owner of Interstate Battery Company, a wholesaler of vehicle batteries. Interstate Battery began as a one-man, one-truck operation distributing approximately 2,000 batteries per year and expanded over a ten-year period to an operation with seven full-time employees, two part-time employees and five tractor-trailer trucks distributing upwards of 30,000 batteries per year.

On February 8, 1989, after a neighbor, defendant Virginia Lavan, filed a citizen's complaint regarding Interstate Battery, defendant Eugene Venettone, the West Amwell Township zoning official, inspected the site and concluded that the Interstate Battery operation was an expansion of the pre-existing nonconforming use and, therefore, was in violation of the local zoning ordinances.

On March 28, 1990, following Venettone's inspection, the plaintiff and Interstate Battery applied to the ZBA for an interpretation of the status of the property or, in the alternative, for a use variance to continue the present use, allowing Interstate Battery to continue its operation. The ZBA upheld Venettone's decision that the current use of the property was in violation of the local zoning ordinances.

After several hearings regarding plaintiff's request for the use variance, the ZBA concluded that the proposed use substantially impaired the intent of the zoning plan and that plaintiff had failed to establish that the variance could be granted without substantial detriment to the public good. On June 25, 1991, the ZBA adopted a resolution of memorialization denying plaintiff's and Interstate Battery's application for a use variance permit for the property.

## B. PROCEDURAL HISTORY

On February 28, 1992, plaintiff filed a four-count complaint against the ZBA, the ZBA defendants, and the Lavans, alleging violations under 42 U.S.C. §§ 1983 and 1985 of his due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, common-law claims for interference with contractual relations and interference with prospective economic advantage, and a violation of the Commerce Clause of the United States Constitution.

Plaintiff later appealed an order filed by United States Magistrate Judge John J. Hughes on November 16, 1992 that granted defendants' request pursuant to Federal Rule of Civil Procedure 26(b) to limit the scope of discovery so as to prohibit plaintiff from questioning the ZBA defendants about the mental process used by each to consider plaintiff's variance application. Defendants also brought a motion for summary judgment to dismiss all counts of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) and (c). The court considered matters outside the pleadings and, therefore, treated defendants' motion as one for summary judgment, and not as a motion to dismiss.

On January 5, 1993, this court denied plaintiff's appeal and granted defendants' motion for summary judgment as to count three, which alleged common-law tortious interference with contractual relations and prospective economic advantage, and count four, which alleged a violation of the Commerce Clause.

Furthermore, the court denied defendants' motion for summary judgment for absolute immunity regarding counts one and two, which alleged violations of 42 U.S.C. §§ 1983 and 1985, respectively, and also denied defendants' motion for summary judgment to dismiss defendants Palilonis, the attorney for ZBA, and Venettone.

Additionally, this court stayed consideration of defendants' summary judgment motion regarding counts one and two pending the outcome of this court's order that plaintiff amend these counts of his complaint within 20 days of the entry of its order so as to assert a cause of action with specificity or suffer dismissal of these claims. Plaintiff filed his amended complaint, as was required to withstand a motion to dismiss, on January 25, 1993. He also filed a motion to amend his complaint a second time, which this court denied on April 5, 1993.

Motions for reargument of this court's January 5, 1993, order were made by both parties. On February 17, 1993, both motions were denied. Pursuant to the Scheduling Order executed by Magistrate Judge John J. Hughes, fact discovery closed in this case on March 26, 1993.

## C. PLAINTIFF'S SUMMARY JUDGMENT MOTION

Plaintiff advances two arguments in support of his motion for partial summary judg-

ment on count one of his complaint. Plaintiff first alleges that his civil rights were violated because defendant Hoff, the Assistant Secretary of the ZBA, participated in the hearings concerning plaintiff's property while he had a pecuniary interest in the outcome of such hearings. Secondly, plaintiff argues that as a matter of law, his due process rights were violated by Hoff's participation in the hearings, as such participation created an appearance of impropriety. This court disagrees.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton,* 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Id.* at 249, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

In the instant case, plaintiff's first argument is that Hoff had a pecuniary interest in the outcome of the hearings and that, therefore, Hoff's participation in the hearings was a violation of the Due Process Clause of the Fourteenth Amendment. The pecuniary interest plaintiff advances in support of his argument consists of one unscheduled five-minute meeting outside a diner in 1988 between plaintiff's tenant, Holmes, and defendant Hoff. At this meeting, Hoff asked Holmes if he was interested in purchasing property which belonged to Hoff's son John as a new location for Interstate Battery. Holmes told Hoff that the property was too small for Interstate Battery's needs and, therefore, he was not interested. Holmes was never contacted again by any person regarding John's property. *See* Holmes Dep. at 122:12–127:4.

Hoff had lent John money to purchase the property. John's brother, Werner, later purchased the property from John. Hoff did not participate in the May 22, 1990, and June 25, 1990, ZBA hearings, to avoid the appearance of a conflict of interest. *See* Hoff Dep. at 57, line 17–19. He did, however, begin to participate starting with the September 25, 1990, meeting, the first hearing on the appeal of plaintiff and Interstate Battery from the issuance of the notice of violation, and after, Hoff alleges, Werner had obtained *de facto* control over the property, but before the property was formally transferred. *See* Hoff Aff. at ¶¶ 30–34.

From this factual scenario, plaintiff alleges that Hoff had a substantial pecuniary interest in the outcome of the hearings and that his participation in the hearings violated his due process rights. Plaintiff relies on *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), in support of his allegation that his due process rights have been violated. In *Lavoie,* the Supreme Court recited that although "the Constitution does not reach every issue of judicial qualification, 'it certainly violates the Fourteenth Amendment ... to subject [a person's] liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case.'" *Id.* at 821–22, 106 S.Ct. at 1585 (citing *Tumey v. Ohio,*

273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927)).

Plaintiff further states that the Supreme Court in *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and the district court in *Wall v. American Optometric Association, Inc.,* 379 F.Supp. 175 (N.D.Ga.1974), *aff'd sub nom. Wall v. Hardwick* 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), imposed constitutional bans on competitors sitting as judges and that because plaintiff and Hoff were competitors, the latter should have been disqualified from the hearings.

■ This court not only disagrees with plaintiff's characterization of these two cases, but also disagrees with plaintiff's characterization of these two parties as competitors. First, the court in *Gibson* and *Wall* found that when a Board member has a substantial pecuniary interest in the outcome of the proceedings, a plaintiff is deprived of his right to an impartial tribunal. Mere theoretical competition alone, however, "has never been a sufficient predicate for an inductive conclusion of probable economic bias." *Rite Aid Corp. v. Board of Pharmacy of N.J.,* 421 F.Supp. 1161, 1169 (D.N.J.1976), *appeal dismissed,* 430 U.S. 951, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).

■ As Holmes stated in his deposition, he told Hoff that the property was too small for Interstate Battery's needs and, therefore, he was not interested. Holmes was never contacted again by any person regarding John's property. *See* Holmes Dep. at 122:12–127:4. The court does not view this type of relationship between plaintiff and Hoff to be that of competitors.

This court does not find that the facts which plaintiff alleges in support of his contention that his due process rights were violated rise to the level of a constitutional violation. Specifically, the court does not agree that Hoff's interest rises to the level of a direct, personal, substantial pecuniary interest in the outcome of the hearings. Hoff also provided the court with an affidavit that stated, "[a]t no time during the hearings on either of the two applications filed by the plaintiff or Interstate Battery before the ZBA, did I ever feel that I could not be fair and impartial in my consideration of the issues presented to the ZBA." *See* Hoff Aff. at ¶ 36.

Even accepting the factual scenario plaintiff has presented, this court is not persuaded by plaintiff's allegations that his civil rights were violated as a result of Hoff's participation in the hearings concerning the property while he held a substantial pecuniary interest in the outcome of the hearings. As stated above, this court does not agree with plaintiff that Hoff's participation in the hearings satisfies the test enunciated in *Tumey* and *Lavoie* to establish a due process violation. Accordingly, plaintiff's motion for partial summary judgment on this basis is denied.

In his reply papers, plaintiff provided the court with a copy of *Northwest Princeton Residents Association, Inc. v. Regional Planning Board of Princeton, et al.* (App. Div. Docket No: A–1283–92T5F), decided on April 2, 1993. In that case, the court determined that there was a conflict of interest between the applicant and one of the Board members.

Specifically, the court found that a combination of the said Board member's husband's relationships were sufficient to find that the Board member had a conflict of interest. First, the Board member's husband, a senior named partner as well as a significant shareholder in a law firm, is a partner with the chairman and CEO of the applicant and with another director of the applicant in a commercial venture which owns and manages an office building. *Id.* at 6.

Also, the husband's law firm leases the third floor and is the largest tenant in the said office building. *Id.* Additionally, the law firm had represented the applicant's parent company from time to time over the five-year period preceding the application. *Id.*

In the instant case, even in light of the above-cited case, the court does not find the facts in this case to support plaintiff's allegations of a conflict of interest relationship between plaintiff and Hoff which would have warranted Hoff's disqualification from the hearings.

Plaintiff's second argument in support of his motion for partial summary judgment is that Hoff's participation in the hearings created an "appearance of impropriety." Plaintiff cites *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), in support of his argument that 'justice must satisfy the appearance of justice.' *Id.* at 136, 75 S.Ct. at 625 (citing *Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954)).

Plaintiff also relies on *In re School Asbestos Litigation,* 977 F.2d 764 (3d Cir.1992), in support of this argument. In that case, the Third Circuit ordered a district court judge to disqualify himself because of a combination of facts which the court believed together created an appearance of partiality that mandated disqualification. Such facts included attending "a predominantly pro-plaintiff conference on a key merits issue; the conference was indirectly sponsored by the plaintiffs, largely with funding that he himself had approved; and his expenses were largely defrayed by the conference sponsors with those same court-approved funds. Moreover, he was, in his own words, exposed to a Hollywood-style 'pre-screening' of the plaintiffs' case: thirteen of the eighteen witnesses the plaintiffs were intending to call gave presentations very similar to what they expected to say at trial." *Id.* at 782.

In this case, plaintiff alleges that Hoff's participation in the hearings gave the "appearance of impropriety" and, therefore, violated plaintiff's civil rights under the Due Process Clause of the Fourteenth Amendment. The only fact in support of this alleged violation relates to Hoff's participation in the hearings after the previously mentioned five-minute unscheduled meeting which took place in 1988, two years before the hearings even began. The court does not find this fact alone sufficient to create an "appearance of impropriety" to warrant Hoff to be disqualified. Accordingly, plaintiff's motion for partial summary judgment is denied.

## D. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR DISMISSAL

Counts one and two of plaintiff's complaint are the only two remaining counts in this action. These counts allege that defendants violated 42 U.S.C. § 1983 and 1985, respectively, in that defendants' actions, performed under the color of state law, deprived plaintiff of his constitutionally guaranteed rights of liberty and property secured and guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. Defendants' motion requests summary judgment on these two remaining counts. The standard for summary judgment has already been set forth above.

Alternatively, defendants are seeking dismissal of the complaint pursuant to Rule 19 of the Federal Rules of Civil Procedure for plaintiff's failure to join an indispensable party. Specifically, defendants argue that plaintiff's wife, Delores Deblasio, is the undivided fifty-percent owner of the property and, therefore, must be a party to this action. The court does not find it necessary to address defendants' Rule 19 argument, because defendants' motion for summary judgment is granted.

### 1. Plaintiff's § 1983 Claim

To establish a cause of action under § 1983, it is necessary for a plaintiff to prove two elements: (1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). That the conduct complained of was committed by a person acting under color of state law in the instant case is not disputed by either party.

Therefore, it is only necessary to evaluate the second element. Both parties appear to agree that there are only three possible constitutional violations to infer from plaintiff's Amended Complaint. These possible violations include a procedural due process violation, a substantive due process violation and a taking in violation of the Fifth and Fourteenth Amendments.

This court finds that when construing the facts and inferences in a light most favorable to plaintiff, his allegations of violations of procedural due process, substantive due process and a taking fail to rise to the levels of constitutional violations; therefore, defendants' motion for summary judgment as to plaintiff's § 1983 claim on these grounds is granted.

### a. PROCEDURAL DUE PROCESS

■ The court will first address defendants' motion to dismiss plaintiff's § 1983 count on procedural due process grounds. To establish a cause of action for a violation of procedural due process, plaintiff must prove that he was deprived of a protected property interest by a person acting under color of state law and that the state procedure for challenging the deprivations does not satisfy the requirements of procedural due process. *Parratt v. Taylor*, 451 U.S. at 537, 101 S.Ct. at 1914. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

■ It is the role of the court, and not the jury, to decide whether the scheme for challenging zoning ordinances satisfied procedural due process. *Midnight Sessions, Ltd.*, 945 F.2d at 682. The Third Circuit has held, "when a state affords a full judicial mechanism with which to challenge the administrative decision . . ., the state provides adequate process." *Id.* at 680 (citations omitted).

■ In this case, the court finds that the New Jersey legislature has enacted a mechanism under the Municipal Land Use Law (MLUL) which does satisfy procedural due process. This scheme enables a party to challenge the zoning officer's decision that plaintiff's property is in violation of the local zoning ordinance, as well as the ZBA's denial of plaintiff's application for a use variance permit for his property.

Plaintiff agrees with defendants that the state scheme was adequate, but states that it is irrelevant to this case because "defendants and conspirators failed to follow that scheme, and invented their own scheme to suit the purposes of the conspiracy against Mr. Deblasio. That failure provides an independent basis for a procedural due process claim." *See* Pl.'s Br. in Opp'n at 33–34. This court disagrees and finds, as a matter of law, that the procedure did not violate the requirements of procedural due process.

Specifically, N.J.S.A. § 40:55D–70(a) and (b) provide that the ZBA shall have the power to hear and decide appeals of the zoning officer's enforcement of a zoning ordinance and hear and decide requests for an interpretation of a zoning ordinance. Furthermore, pursuant to subsections (c) and (d) of this statutory section, the ZBA shall have the power to grant a request for a variance or other relief, so long as the variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zone ordinance. ·

Also, pursuant to N.J.S.A. § 40:55D–72, any interested party affected by any decision of an administrative officer of the municipality based on or made in the enforcement of the zoning ordinance or official map can appeal to the ZBA.

Last, pursuant to Rule 4:69–1 et seq. of the New Jersey Court Rules, plaintiff is entitled to a review, a hearing and relief by filing a complaint, before the expiration of 45 days from the time plaintiff received notice that his application was denied, in the Superior Court, Law Division, bearing the designation "In Lieu of Prerogative Writs." On March 9, 1993, plaintiff filed a state court action in the Superior Court of New Jersey, Hunterdon County, Law Division, against the same defendants and alleging the same claims, approximately twenty months after plaintiff had been notified of the ZBA's decision to deny plaintiff's request for a variance, rather than within the requisite 45–day period.

Plaintiff states that his failure to exhaust state remedies is not relevant in this case, because a § 1983 case does not depend upon exhaustion of state remedies. *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). Nevertheless, in the Third Circuit, a state provides adequate due process when it provides reasonable remedies to rectify a legal error by a local administrative body. *Bello v.*

*Walker*, 840 F.2d 1124, 1128 (3d Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (quotations omitted) (citations omitted). Therefore, even assuming that plaintiff has a protected property interest, this court finds as a matter of law that the state procedure for challenging the ZBA's denial of a variance satisfies the requirements of procedural due process. Accordingly, defendants' motion for summary judgment on plaintiff's § 1983 claim of a procedural due process violation is granted.

### b. SUBSTANTIVE DUE PROCESS

■ The test to determine whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest. *Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3d Cir.1980), *cert. denied sub nom. Mark–Garner Assocs., Inc. v. Bensalem Township*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *Midnight Sessions, Ltd.*, 945 F.2d at 682. Whether a legislative scheme is rationally related to a legitimate government interest is a question of law for the court to determine. *Id.* at 682. However, "in disputed factual situations, determinations of the existence of bias, bad faith, improper motive, racial animus, or the existence of partisan political or personal reasons are properly made by the finder of fact." *Id.* at 683.

■ In the instant case, plaintiff's complaint alleges that defendants' denial of plaintiff's application for a use variance with respect to the property and defendants' determination that the property was in violation of a municipal zoning ordinance was based upon unlawful criteria. *See* Pl.'s Am.Compl. at ¶ 44(b). However, discovery is now closed and plaintiff has failed to offer any evidence to support such allegation.

The only possible "illegal conduct" which plaintiff might be referring to appears in Holmes's affidavit and recites that Hoff participated in the hearings in light of the five-minute conversation which took place between the two individuals. *See* Holmes Aff. This evidence is not sufficient to enable a jury to establish bias, bad faith, improper motive, racial animus, or the existence of partisan political or personal reasons and,

therefore, to return a verdict in plaintiff's favor.

Furthermore, as stated above, Hoff also provided the court with an affidavit that stated, "[a]t no time during the hearings on either of the two applications filed by the plaintiff or Interstate Battery before the ZBA, did I ever feel that I could not be fair and impartial in my consideration of the issues presented to the ZBA." *See* Hoff Aff. at ¶ 36. Accordingly, defendants' motion for summary judgment on plaintiff's § 1983 claim of a substantive due process violation is granted.

### c. TAKING WITHOUT JUST COMPENSATION

■ Even assuming that plaintiff's taking claim is ripe, plaintiff has failed to establish that defendants' denial of plaintiff's application for a use variance with respect to the property and defendants' determination that the property was in violation of a municipal zoning ordinance constitutes a taking. This Circuit has consistently taken a narrow view of what constitutes a taking of property by regulation. *Midnight Sessions, Ltd.*, 945 F.2d at 677; *Rogin*, 616 F.2d at 692.

In *Rogin*, the court stated that the Supreme Court would uphold the application of the law, unless such application destroys or severely diminishes the value of the property, even if the legislation prohibits a beneficial use to which individual parcels had previously been devoted, and thus causes substantial individualized harm. *Id.* at 690 (quotations omitted) (citations omitted).

In the instant case, the zoning ordinance which plaintiff alleges constitutes a taking was enacted in the 1960's, before plaintiff purchased the property. In 1979, when plaintiff rented the property to Holmes, plaintiff did not consult with the Township as to whether Interstate Battery's use of the property as a distributor of pre-manufactured lead acid batteries was permissible. Therefore, the legislature did not "take" property with a beneficial use which the property previously enjoyed.

In *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991), the court stated that "a taking requiring compen-

sation occurs only when a regulation that 'destroyed or adversely affected recognized real property interests' reaches a certain magnitude." *Id.* at 676 (citing *Keystone Bituminous Coal Ass'n v. Duncan,* 771 F.2d 707, 715 (3d Cir.1985), *aff'd,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987)). In that case, the district court denied defendant's motion for summary judgment on the issue of a taking of property without just compensation, and the Third Circuit reversed this ruling. The Third Circuit stated that the denial of dance hall licenses did not destroy the value of the properties and, therefore, that appellants were not denied all economically feasible uses of the properties. *Midnight Sessions, Ltd.,* 945 F.2d at 678.

Likewise, in the instant case, the denial of plaintiff's application for a use variance to enable Interstate Battery to remain on the property does not destroy the value of the property. Plaintiff states in his complaint that "the value of the property in its present use was $72,000.00 and that the value of the building lot after the removal of the building was $32,250.00." *See* Pl.'s Am.Compl. at ¶ 38(c).

In *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1031 (3d Cir.1987), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), the court affirmed defendants' motion to dismiss plaintiff's allegation of a taking where the property had a value of $495,600.00 before the zoning change and a value of $52,000.00 after the zoning change. *Id.* at 1031. It stated that, "although there has been a substantial diminution in value, this property retains a substantial value that establishes the existence of residual economically feasible uses." *Id.*

In the instant case, not only was the zoning ordinance in effect before plaintiff purchased the property, thus putting plaintiff on notice, but plaintiff states in his complaint that the property would retain half of its value without Interstate Battery on the property. Accordingly, the court does not find that there has been a taking without just compensation and, therefore, defendants' motion for summary judgment on plaintiff's § 1983 claim of a taking without just compensation is granted.

### 2. Plaintiff's § 1985 Claim

For plaintiff to establish a § 1985(3) violation, he " 'must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Wagner v. Township of Harmar,* 651 F.Supp. 1286 (W.D.Pa.1987), *aff'd,* 826 F.2d 1058 (3d Cir. 1987) (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO, et al. v. Scott et al.,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983)).

Courts have construed the second element to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). *Wagner v. Township of Harmar,* 651 F.Supp. at 1288. In *Rodriguez v. Nazario,* 719 F.Supp. 52 (D.P.R.1989), the court granted defendant's motion to dismiss plaintiff's § 1985(3) claim on the ground that being a member of a political party did not constitute a protected class under this statute. *Id.* at 56–57.

Plaintiff's allegation that he was discriminated against because he was not a political insider similarly fails to allege that he is part of any protected class which would bring him under the protection of § 1985. Accordingly, defendants' motion for summary judgment on plaintiff's § 1985 claim is granted. No costs.