Albert D'AURIZIO, Plaintiff,

v.

PALISADES PARK, et al., Defendants.

Civil No. 93–4417(JAG).

United States District Court,
D. New Jersey.

April 29, 1997.

Michael S. Kimm, Hackensack, NJ, for plaintiff.

Sinisi, Van Dam, Sproviero & Sokolich, Paramus, NJ, for James Nichols, Carmine Verdicchio.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion to dismiss, or alternatively for summary judgment, of Sinisi, Van Dam, Sproviero & Sokolich, attorneys for defendants James Nichols and Carmine Verdicchio. Because both parties present extrinsic material, the Court will treat this motion as one for summary judgment, pursuant to Fed. R.Civ.P. 56.

### *PRELIMINARY STATEMENT*

Plaintiff Albert D'Aurizio ("D'Aurizio"), and his wife Debbie, are members of a large and politically active family in the Borough of Palisades Park (the "Borough"). For years, the D'Aurizios participated in local Republican and school board politics. D'Aurizio's sister-in-law, Carol Killion (one of the defendants in this case), was president of the Palisades Park Board of Education (hereinafter, the "Board"). All of the defendants in this case are individuals D'Aurizio knows through his involvement in local politics; they include William Maresca, the Republican Mayor of the Borough between 1991 and November 1995, and various members of the Board and the Borough Council. In short, D'Aurizio's claims against the defendants stem from his belief that because he ran for a seat on the Council in 1991 as an independent, as opposed to a Republican candidate, the defendants—all, except for one, who are affiliated with the Republican party—participated in a conspiracy to fire him from his Board-appointed position as a school custodian. In addition, D'Aurizio claims that subsequent to the elimination of his custodial position in June 1992, defendants continued their conspiracy against him by ensuring that the Board did not place his name on the part-time custodial roster in December 1992, thereby precluding him from exercising his alleged right of first refusal.[1]

---

1. On October 4, 1993, D'Aurizio filed his initial Complaint in this case. On February 14, 1994, D'Aurizio filed an Amended Complaint (hereinafter, the "Amended Complaint"), seeking relief against the defendants for: (1) conspiring to violate his First Amendment rights of freedom of

## FACTS

### D'Aurizio's Candidacy

In April 1991, D'Aurizio, a former Republican, announced his candidacy as an independent candidate for a seat on the Council. In late May or early June 1991, the Board hired D'Aurizio as a part-time custodian. In August 1991, the Board decided, by vote, to make D'Aurizio a fill-time custodian. In November 1991, D'Aurizio ran for Council against the Republican ticket and lost. D'Aurizio's alleges that his campaign caused a division among the local Republicans. Amended Complaint ¶ 27.

### 1992–1993 School Budget

In approximately December 1991, the budget process for the Borough's 1992–1993 school year began. On February 4, 1992, the Board met to discuss preliminary cuts to the budget; these cuts included the elimination of one custodial position (a $30,000 cut) and two maintenance positions (a $60,000 cut). Sherwood Dep., at 174–75.[2] On March 17, 1992, the Board presented its 1992–1993 school budget—with the proposed cuts—at a public hearing. Eichenholtz Dep., at 247.[3] On or about April 7, 1992, the Borough voters defeated the school budget. Killion Dep., at 586–87.[4] As a result, on April 22 and April 26, 1992, the Board, the Mayor (Maresca) and the Council met to review the budget and to determine if they could make any other cuts.[5] These were open meetings mandated by New Jersey State statute and recited in the Council's School Board Budget Resolution, passed on April 27, 1992 (hereinafter, the "April 27 Budget Resolution").

### Conspiracy Meetings

D'Aurizio alleges that in addition to the two mandated meetings, members of the "Republican majority" from the Borough secretly met in April[6], and again on June 9, 1992, to conspire to eliminate D'Aurizio's position as a school custodian, i.e., in retaliation for his 1991 independent candidacy for Council.[7] Amended Complaint ¶ 32. Specifically, D'Aurizio claims that Michael DeBartolo[8], the campaign manager for D'Aurizio's Republican opponent in the November 1991 election, stated at the secret meeting in April: "We're getting rid of Al [D'Aurizio] because he ran against us." *Id.* D'Aurizio adds that all the other Republican members of the Board tacitly agreed with DeBartolo's suggestion "by nodding, or other acts showing ratification of the conspiracy proposal." *Id.*

---

association, freedom of speech, freedom to vote and his Fourteenth Amendment rights to equal protection and procedural and substantive due process; (2) violating his First Amendment rights of freedom of association, freedom of speech, freedom to vote and his Fourteenth Amendment rights to equal protection and procedural and substantive due process; (3) conspiring to violate 42 U.S.C. §§ 1983 and 1985; (4) violating 42 U.S.C. §§ 1983, 1985 and 1986; (5) violating New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5–1 to:5–42; and (6) tortious interference.

2. Deposition of Linda A. Sherwood, sworn to on June 13, 1995.

3. Deposition of David Eichenholtz, sworn to on January 4, 1996.

4. Deposition of Carol Killion, sworn to on May 23, 1995.

5. Pursuant to New Jersey State statutory law, school budgets in New Jersey are created in the following way: (1) the school Board develops a budget, N.J.S.A. 18A:22–32; (2) the dollar amount needed to support the budget is then presented to the voters, N.J.S.A. 18A:22–33; and (3) if the budget passes, the process ends but if it is defeated the Mayor and the Council are mandated to examine the budget and to determine if there are areas where cuts can be made. N.J.S.A. 18A:22–37.

6. D'Aurizio does not provide the exact date of the alleged secret meeting in April.

7. D'Aurizio alleges that Maresca, Republican Board members—Michael DeBartolo, Mathew Nichols, Robert Carney, Ms. Killion, and Mary Beth Cottrell, and Democrats—Fred Knopp, John Madisench and Chris Brown, attended the secret meeting in April. D'Aurizio further alleges that the same people attended the secret meeting in June, along with Republicans Thomas Tuscano (Republican Municipal Chairman) Virginia DeBartolo (Borough official), Paul Albanese (Borough Council) and Susan Giacobone (executive member of Palisades Park Republican Party). D'Aurizio also claims that the secret meeting in June was held in the conference room of a local law firm, Rotolo & Rotolo.

8. Mr. DeBartolo is also a defendant in this case.

However, D'Aurizio testified at his deposition that his basis for believing that the defendants secretly met, both in April and in June, came only from alleged conversations he had with Carol Killion (his sister-in-law), *see* D'Aurizio Dep., at 127–28, and defendant Peter Marose, a Democratic member of the Board. *Id.* at 135–36. Indeed, D'Aurizio admitted at his deposition that other than what he could "surmise" from these two conversations, he had no other knowledge of the alleged secret meeting, which he believes occurred some time in April. *Id.* at 136 & 139–40. In addition, Ms. Killion stated at her deposition that the April meeting was "an open meeting and anyone could have come." Killion Dep., at 105–06. Moreover, when D'Aurizio was specifically questioned about his conversation with Ms. Killion regarding the alleged secret meeting in April, D'Aurizio responded: "I do not recall exactly how we found out from her [Ms. Killion]." D'Aurizio Dep., at 127–28.

Ms. Killion also admitted at her deposition that the June meeting was an open Republican meeting, held at the law offices of Rotolo & Rotolo, to discuss the vacant seat on the Board. Killion Dep., at 178–86. In addition, Ms. Killion testified that D'Aurizio's name was not even mentioned during this June meeting other than in a private, side conversation she (Ms. Killion) had with Mr. Albanese, the content of which was: "Paul, Paul [Albanese], come on, this is my brother-in-law", to which Mr. Albanese allegedly responded "well, fire them all." *Id.* at 101.

### D'Aurizio's Termination

On June 2, 1992, the Board informed D'Aurizio by letter that his job would be discussed at the June 9 meeting. D'Aurizio Dec. ¶ 21. On June 9, 1992, the Board voted to eliminate one custodian and two maintenance positions. In short, the Board officially terminated D'Aurizio's custodian job. *Id.*

9. Mr. Fasciano is also a defendant in this case.

10. References in the form "Nichols Aff. ¶ " are to the Affidavit of James Nichols, sworn to on May 28, 1996, and submitted in support of this motion.

11. The Business Administrator and Board Secretary are two separate and distinct positions, and,

### Nichols and Verdicchio

In November 1992—i.e., after D'Aurizio's termination in June 1992—the Board appointed defendant James Nichols ("Nichols") to replace George Fasciano[9] as the Palisades Park Superintendent of Schools (the "Superintendent"). Nichols Aff. ¶ 2.[10] As Superintendent, Nichols' primary area of focus was the educational curriculum; he generally left responsibility for non-educational matters to the Business Administrator/Board Secretary.[11] *Id.* at ¶ 4. At no time did Nichols have either the power or the authority to place D'Aurizio's name on—or to keep him off—the Board's list of part-time custodial/maintenance employees. *Id.* at ¶ 6. D'Aurizio specifically refers to Nichols in only 2 of the total 108 paragraphs of his Amended Complaint. First, in paragraph 17, D'Aurizio provides Nichols' address and position as Superintendent and alleges that "Nichols ... conspired and acted in his official and individual capacities in violation of D'Aurizio's rights as more fully stated below." Second, in paragraph 72, D'Aurizio makes a number of other allegations including that:

> Defendant James Nichols acted in furtherance of the conspiracy by following the lead of other defendants notwithstanding his knowledge as to the impropriety of such conduct. In addition, defendant James Nichols actively covered up, and otherwise failed to prevent, the conspiracy and wrongful conduct committed by other defendants, notwithstanding his knowledge of such facts and his opportunity to prevent such conduct. Defendant James Nichols ratified the other defendants' conspiracy and meetings as though to be an actual participant from their inception.

> Defendant Carmine Verdicchio ("Verdicchio") was, at all relevant times, employed by the Board as the "lead" custodian for the Palisades Park schools. Verdicchio Aff. ¶ 1.[12]

in most school systems, are held by two different individuals. However, in Palisades Park, defendant David Eichenholtz functioned as both Business Administrator and Board Secretary.

12. References in the form "Verdicchio Aff. ¶ _" are to the Affidavit of Carmine Verdicchio, sworn to on May 28,1996, and submitted in support of this motion.

As lead custodian, Verdicchio did not have the power or authority to hire or fire employees, including D'Aurizio. *Id.* at ¶ 3. Verdicchio also had no involvement, either in his capacity as lead custodian or individually, in the Board's (1) decision to eliminate one custodial and two maintenance positions in June 1992 or (2) "adoption of a list of part-time custodial/maintenance employees[.]" *Id.* at ¶¶ 4-5. D'Aurizio similarly only specifically refers to Verdicchio in 2 paragraphs of his Amended Complaint. First, paragraph 16 provides Verdicchio's address, position as lead custodian and the same conclusory allegation as set forth against Nichols in paragraph 17. Second, paragraph 70, states, in pertinent part, that:

> [D]efendant Verdicchio, as Lead Custodian, was empowered and authorized to process job vacancies and offers for the exercise of the right of first refusal. Defendant Verdicchio acted in furtherance of the conspiracy by following the lead of defendant DeBartolo, notwithstanding his knowledge as to the impropriety of such conduct. In addition, defendant Verdicchio actively covered up the conspiracy and wrongful conduct committed by the other defendants. Defendant Verdicchio ratified the other defendants' conspiracy and meetings as though to be an actual participant from their inception.

However, other than these sweeping allegations, D'Aurizio provides no evidence to bridge the chasm between his broad conclusion that his Constitutional rights were violated and the assertion that either Nichols or Verdicchio are to blame. Accordingly, D'Aurizio's allegations fail to state a claim as a matter of law against either Nichols or Verdicchio. Therefore, the Amended Complaint is dismissed as to defendants Nichols and Verdicchio.

**13.** Specifically, 42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

## DISCUSSION

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent., Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130-31 (3d Cir.1995); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

### 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983 ("section 1983"), a plaintiff must allege two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived plaintiff of rights, privileges or immunities secured by the U.S. Constitution or laws of the United States[13]. *See West v. Atkins,* 487 U.S. 42, 48-49, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988); *Shaw by Strain v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir.1990); *McArdle v. Tronetti,* 769 F.Supp. 188, 190 (W.D.Pa.1991), *aff'd,* 961 F.2d 1083 (3d Cir.1992).

However, "claims for violations of civil rights in this circuit are subject to height-

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

ened standards of factual specificity in pleading." *Rourke v. United States,* 744 F.Supp. 100, 104 (E.D.Pa.1988), *aff'd,* 909 F.2d 1477 (3d Cir.1990) (citing *Colburn v. Upper Darby Township,* 838 F.2d 663 (3d Cir.1988)); *see also Hauptmann v. Wilentz,* 570 F.Supp. 351, 374 (D.N.J.1983) ("The Third Circuit requires that a civil rights complaint contain a modicum of specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs."), *aff'd,* 770 F.2d 1070 (3d Cir.1985) (citations omitted).

■ Furthermore, in most contexts, the section 1983 "acting under color of state law" inquiry is identical to the "state action" requirement under the Fourteenth Amendment. *Groman v. Township of Manalapan,* 47 F.3d 628, 638 n. 15 (3d Cir.1995) (citing *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 427 n. 3 (3d Cir.1988)). Thus, "[w]here the actors are not state or municipal officials, but are private individuals or associations . . . their activity can nevertheless be deemed to be under color of law." *Id.* at 638. In short, a private party is converted into a state actor where "he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Company, Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982).[14]

However, a private action "is not converted into one under color of state law merely by some tenuous connection to the state action. The issue is not whether the state was involved in some way in the relevant events but whether the action taken can be fairly attributed to the state itself." *Groman,* 47 F.3d at 638–39 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). In addition, "[i]t is not enough . . . to show that the private and state actors might have had a common goal unless there is a factually specific allegation that they directed themselves toward an unconstitutional act by virtue of a mutual un-

derstanding or agreement." *Hauptmann,* 570 F.Supp. at 382 (emphasis added) (citations omitted). Moreover, because the "under color of state law" requirement is part of the prima facie case for a section 1983 claim, "the plaintiff bears the burden of proof on that issue." *Groman,* 47 F.3d at 638 (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988)).

■ In this case, D'Aurizio's allegations that Nichols and Verdicchio conspired against him are vague and unsubstantiated. In short, D'Aurizio's conclusory contention that Nichols and Verdicchio "conspired and acted in [their] . . . official and individual capacities in violation of D'Aurizio's rights" fails to state a claim with the required "modicum of specificity." Amended Complaint ¶¶ 16 –17. D'Aurizio's's other allegations are also void of any specific factual references: that, for example, Nichols and Verdicchio "actively covered up, . . . otherwise failed to prevent . . . [and] ratified the other defendants' conspiracy and meetings[.]" *Id.* at ¶¶ 71–72. Indeed, as Superintendent and lead custodian, respectively, neither Nichols nor Verdicchio had the power to hire or fire D'Aurizio. In short, D'Aurizio has failed to set forth any facts to support his allegations that Nichols and Verdicchio, each in their respective individual capacity, conspired with the other defendants to violate, and actually did violate, D'Aurizio's rights under the Constitution or pursuant to federal law. Accordingly, D'Aurizio's section 1983 claim against Nichols and Verdicchio are dismissed, in the first instance, for lack of specificity.

### Discrimination based on Political Association

■ To make out a prima facie case of discrimination based on political association—i.e., pursuant to the First Amendment—a public employee must prove:

(1) that the employee works for a public agency in a position that does not require a

---

**14.** *See also Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 621–22, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991) ("in determining whether a particular course of conduct is governmental in character, it is relevant to examine . . . the extent to which the actor relies on governmental assistance and benefits; . . . whether the actor is performing a traditional governmental function; . . . and whether the inquiry caused is aggravated in a unique way by the incidents of governmental authority.")

political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision.

*Robertson v. Fiore,* 62 F.3d 596, 599 (3d Cir.1995) (citing *Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); *Perez v. Cucci,* 725 F.Supp. 209, 238–39 (D.N.J.1989), *aff'd,* 898 F.2d 139 (3d Cir. 1990)).[15] If the plaintiff-employee is able to show his political association is a substantial or motivating factor in the adverse employment decision, the burden shifts to the employer to show "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Robertson,* 62 F.3d at 599 (citations omitted); *Raniero v. Antun,* 943 F.Supp. 413, 423 (D.N.J.1996).

In this case, D'Aurizio contends that he was fired from his custodian position because of his political association. However, D'Aurizio's evidence amounts to no more than conclusory allegations that he spoke to two individuals, one of whom is his sister-in-law, who told him the defendants secretly met and conspired to eliminate his custodian position with the Board. By contrast, the defendants provide the Court with ample documentary and testimonial evidence demonstrating that the Borough's April 27 Budget Resolution (which eliminated D'Aurizio's job), as well as the Board's prior cuts to the budget, were motivated by nothing more than a legitimately perceived need to reduce the school budget.

Moreover, D'Aurizio does not even argue that either Nichols or Verdicchio attended the very meetings—in April and June—where the other defendants allegedly conspired against him In addition, as lead custodian, Verdicchio did not have the power or authority to hire or fire employees, including D'Aurizio. Verdicchio Aff. ¶ 3. Verdicchio also had no involvement, either in his capacity as lead custodian or individually, in the Board's (1) decision to eliminate one custodial and two maintenance positions in June 1992, or (2) "adoption of a list of part-time custodial/maintenance employees[.]" *Id.* at ¶¶ 4–5. As Superintendent, Nichols' primary area of focus was the educational curriculum; he generally left responsibility for non-educational matters to the Business Administrator/Board Secretary. Nichols Aff. ¶ 4. Nichols also did not have either the power or the authority to place D'Aurizio's name on—or to keep him off—the Board's list of part-time custodial/maintenance employees. *Id.* at ¶ 6.

Accordingly, D'Aurizio has failed to show that his 1991 independent candidacy for Council—and thus his political association—was a "substantial or motivating factor" in the Board's decision to eliminate his custodian position; moreover, even if he had proven discrimination by the Board, D'Aurizio provides no evidence that the defendants, Nichols or Verdicchio, even participated in the decision to eliminate his job. Therefore, D'Aurizio's First Amendment claims, and consequently his section 1983 claims, against defendants Nichols and Verdicchio are dismissed.[16]

### 42 U.S.C. § 1985

To establish a claim in violation of the first clause [17] of 42 U.S.C. § 1985(3) ("section 1985(3)"), the plaintiff must allege and prove four elements:

---

**15.** "[A]n employee can show a protected political affiliation even if he or she is a member of the same political party as his or her employer so long as the employer and employee are members of competing identifiable factions within that same party." *Christy v. Pennsylvania Turnpike Commission,* 904 F.Supp. 427, 430 n. 3 (E.D.Pa. 1995).

**16.** Aurizio has also failed to present sufficient evidence to substantiate his Fourteenth and Fifteenth Amendment claims against the defen-

dants. D'Aurizio's section 1983 claim, premised on his Fourteenth and Fifteenth Amendment claims, is therefore also dismissed.

**17.** The first clause of section 1985(3) states, in pertinent part: "If two or more persons ... conspire ... for the purpose of depriving. either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]"

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Deblasio v. Zoning Bd., of Adjustment for the Township of West Amwell,* 820 F.Supp. 876, 885 (D.N.J.1993) (quoting *Wagner v. Township of Harmar,* 651 F.Supp. 1286 (W.D.Pa.), *aff'd,* 826 F.2d 1058 (3d Cir.1987)) (citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–57, 77 L.Ed.2d 1049 (1983)). Courts have construed the second element to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268–69, 113 S.Ct. 753, 759, 122 L.Ed.2d 34(1993) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Pratt v. Thornburgh,* 807 F.2d 355, 357 (3d Cir.1986)). Thus, for example, an allegation by a plaintiff "that he was discriminated against because he was not a political insider ... fails to allege that he is part of any protected class which would bring him under the protection of § 1985." *Deblasio,* 820 F.Supp. at 885.

■ In this case, even if D'Aurizio could prove the conspiracy and injury elements of his section 1985(3) claim against the defendants, he does not allege that the defendants' actions were motivated by "racial or other class-based invidiously discriminatory animus." Rather, here D'Aurizio is merely claiming that the defendants conspired against him, individually, because of his political association.

Accordingly, D'Aurizio's section 1985(3) claim against defendants Nichols and Verdicchio is dismissed.

### 42 U.S.C. § 1986

■ 42 U.S.C. § 1986 ("section 1986") provides a damages remedy against an individual who fails to prevent a section 1985(3) conspiracy. *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1221 n. 9 (D.N.J.1984). Thus, all claims under section 1986 are derivative in nature, requiring a valid underlying section 1985(3) claim. *Id.* at 1221 (citing *Hauptmann v. Wilentz,* 570 F.Supp. 351, 387 (D.N.J.1983)); *see also Bowman v. Bank of Delaware,* 666 F.Supp. 63, 64 (D.Del.1987) ("If the complaint does not state a § 1985(3) cause of action, then any § 1986 claim must fail as well.") In addition, there is a one year statute of limitations for section 1986 claims. *Marino v. Bowers,* 483 F.Supp. 765, 769 (E.D.Pa.1980), *aff'd,* 657 F.2d 1363 (3d Cir. 1981).

Accordingly, D'Aurizio's section 1986 claim in this case fails both because he does not state a valid section 1985(3) claim against the defendants and because he waited for more than one year to file his claim.[18]

### Pendent Jurisdiction

■ This Court cannot exercise pendent jurisdiction over state law claims unless, at a minimum, there is:

a federal claim of sufficient substance to confer subject matter jurisdiction on the court. The substantiality of the federal claim is ordinarily determined on the basis of the pleadings. If it appears that the federal claim is subject to dismissal under F.R. Civ. P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.

*Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195–96 (3d Cir.1976) (citations omitted); *see also University of Maryland at Baltimore v. Peat, Marwick, Main & Company,* 996 F.2d 1534, 1540 (3d Cir.1993).

D'Aurizio alleges state law claims—tortious interference and LAD violations—against the moving defendants. However,

---

**18.** D'Aurizio's section 1986 claim accrued no later than June 9, 1992, when he lost his custodian position with the Board. D'Aurizio filed his initial Complaint on October 4, 1993, more than one year later.

D'Aurizio's federal civil rights claims are subject to dismissal by this Court and there are no "extraordinary circumstances" justifying retention of pendent jurisdiction over the state law claims in this case.

Accordingly, defendants' summary judgment motion for an Order of dismissal of plaintiff D'Aurizio's Amended Complaint as to defendants James Nichols and Carmine Verdicchio is hereby granted.

## ORDER

This matter having been opened to the Court by Sinisi, Van Dam, Sproviero & Sokolich, attorneys for defendants James Nichols and Carmine Verdicchio, and the Court having considered the submissions of the parties, and good cause appearing,

IT IS on this 28th day of April, 1997

ORDERED that defendants' motion for summary judgment, pursuant to Fed. R.Civ.P. 56(c), for an Order of dismissal of plaintiff's Amended Complaint with respect to defendants—James Nichols and Carmine Verdicchio—be and hereby is granted; and

IT IS FURTHER ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.